**Pearline BULLS, Plaintiff,**

v.

**NORTON COMMUNITY HOSPITAL, INC., et al., Defendants.**

**No. 2:99CV00016.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Dec. 9, 1999.

---

Edward Gaines Stout, Jr., Bressler, Curcio & Stout, Bristol, VA, for Plaintiff.

Julie Poe Bennett, Hunter, Smith & Davis, Kingsport, TN, Stephen M. Darden, Hunter, Smith & Davis, Johnson City, TN, for Defendants.

## OPINION

JONES, District Judge.

In this Employee Retirement Income Security Act case, I grant the defendants' motion for summary judgment.

### I

██ The plaintiff, Pearline Bulls, initially filed this action in the Circuit Court of Wise County, Virginia, claiming that prior to beginning her employment with the defendants, she was promised that she would have the opportunity to participate in an employer-sponsored retirement plan.[1] According to Bulls, the defendants provided an employer-sponsored 401(k) retirement plan[2] when she began working, but this plan "ceased operation" in April of 1996, and Bulls was "no longer a participant in the new plan." (Mot. J. Cir. Ct. Wise County ¶ 4.) Bulls asserted that she repeatedly asked her employer about a new retirement plan and was given assurances that a new plan would be provided for her "in the very near future." (*Id.*) Bulls further asserted that the assurances that a new plan would be created continued until she left employment and that she would have found a new job if these assurances had not been made. Bulls determined, after repeated assurances to the contrary,

---

1. The plaintiff was employed by either Norton Community Hospital, Inc. or its wholly owned subsidiary, Community Physicians Services Corp. (Am. Compl. ¶ 3; Mem. Supp. Mot. Dismiss at 1.) Although it is not clear who employed the plaintiff, this is not a material issue. Both are joined as defendants.

2. A 401(k) plan is a type of retirement plan in which the employee elects current compensation or a contribution to the plan on a tax-deferred basis. *See* Robert P. Mohan, *The Section 401(k) Plan: A Checklist of Advantages and Disadvantages,* 73 Ill. B.J. 280 (1985).

that no plan would be provided for her. Consequently, she "left her employment with the defendants in November, 1997." (*Id.* at ¶ 7.)

The defendants timely removed the action to this court on the basis of federal subject matter jurisdiction derived from title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1145 (West 1999) ("ERISA"). The defendants also filed a motion to dismiss on the grounds that the state law claims asserted by the plaintiff were preempted by ERISA and that Bulls stated no cognizable ERISA cause of action.

Following the filing of the defendants' motion to dismiss, the plaintiff filed an amended complaint. The amended complaint claimed that this court had jurisdiction pursuant to 29 U.S.C.A. § 1132, restated the allegations contained in Bulls' initial motion for judgment, alleged that the defendants made material representations to the plaintiff on which she had justifiably relied, and claimed that the defendants are "equitably estopped from denying pension benefits to Plaintiff." (Pl.'s Am. Compl. ¶ 13.)

Bulls submitted an affidavit, swearing that she began working with the assurance that a pension plan would be provided and that she was told she could no longer participate in the 401(k) plan. (Pl.'s Aff. ¶ ¶ 1–2.) Additionally, Bulls alleges that she would not have remained employed by the defendants had they not reassured her that they would soon provide a plan in which she could participate. (*Id.* ¶ 4.)

The defendants then filed a second motion to dismiss. In support of this motion, the defendants submitted a copy of their letter to Bulls regarding the job offer and associated benefits. (Def.'s Ex. A.) The defendants also submitted an affidavit from Valeri Colyer, the defendants' director of human resources. According to Colyer, the 401(k) plan is still in existence, but Bulls voluntarily withdrew from the plan when it became apparent that the plan would continue to fail discrimination testing, and Bulls' contributions would be refunded to her. (Colyer Aff. ¶ 3, 5–6.) Colyer contends that Bulls asked about alternative plans from time to time, and that she informed Bulls that the defendants had not reached any decisions about alternate plans. (Colyer Aff. ¶ 8.)

Because both sides submitted affidavits and other materials outside of the pleading, I notified the parties that the motion would be treated as a motion for summary judgment and granted leave to file any further materials. *See* Fed.R.Civ.P. 12(b)(6); *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1471 (4th Cir.1991). The time has passed for further submissions, and the case is now ripe for decision.

## II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327, 106 S.Ct. 2548.

## III

■ As a threshold matter, I must first determine whether this court has subject-matter jurisdiction to hear this cause of action.[3] In litigation under ERISA, "[t]he existence of a plan is a prerequisite to jurisdiction." *Harris v. Arkansas Book Co.*, 794 F.2d 358, 360 (8th Cir.1986). Thus, the first question is whether or not there is a "plan" at issue.

There are two possible retirement "plans" that could be the basis for jurisdiction in this matter. One is the "plan" the defendants allegedly promised the plaintiff for the year and a half before she resigned, and the other is the 401(k) plan the defendants had in place when the plaintiff accepted her position.

■ The plaintiff contends that the subject of the lawsuit is the "plan" allegedly promised to her from April 1996 to November 1997, when she resigned, and not the 401(k) plan in operation when she accepted the job offer. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 2.) According to Bulls, after she stopped participating in the 401(k) plan, the defendants repeatedly promised and assured her that a new plan would be provided in the near future. The plaintiff contends that a plan was established by these repeated promises and assurances. (*Id.*) However, I find that these promises do not constitute a plan under ERISA.

An informal ERISA plan is established only when a reasonable person could, from the surrounding circumstances, ascertain "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861 (4th Cir.1994) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

The promises relied upon by Bulls were not specific. Bulls claims only that "agents of the Defendants made repeated assurances to me that a new plan, in which I could participate, would be forthcoming." (Pl.'s Aff. ¶ 3.) No specific details as to amounts, dates, or administration of the plan were discussed. Given these vague assurances, a reasonable person could not discern the intended benefits, the source of financing, or the procedures for receiving the benefits of such a plan. Therefore, these promises did not establish a plan under ERISA.

The second possible retirement plan, and the one that I find establishes this court's jurisdiction, is the 401(k) retirement plan in place and offered by the defendants when Bulls was hired. This is the plan referred to in the defendants' March 14, 1995, letter to Bulls regarding the proposed salary and benefits package offered. (Def.'s Ex. A.) The letter refers to a retirement plan that is described as "[a] tax shelter annuity plan with matching funds. Your employer will contribute $.25 for every dollar you contribute to the plan, up to a maximum of 4% of salary." (*Id.* at 1.) The bottom of the page states, "[t]he benefits listed above are based on current plan provisions. Please be advised that our plans are subject to change...." (*Id.*)

In spite of the plaintiff's assertion that "the subject of this lawsuit is not the 401–K Plan," this plan is integrally connected to her claims.[4] (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 2.) This 401(k) plan is specifically referred to in both the original and amended complaints. This plan also satisfied the plaintiff's requirements for a retirement plan when it was available to her. In addition, any damages awarded to the plaintiff would be based on this plan. *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d

---

3. None of the parties have raised the question of jurisdiction, but the court is obligated to assure itself of its jurisdiction sua sponte. *See* Fed.R.Civ.P. 12(h)(3).

4. The analysis is similar to cases involving state law preemption where a plaintiff claims that the lawsuit does not involve an existing ERISA plan. In the preemption context, a state law claim is preempted if it "relates to" an employee benefit plan. 29 U.S.C.A. § 1144(a).

1290, 1294 (5th Cir.1989). There are no other plan terms to base damages on, and any other measurement would be speculative. *See id.* Therefore, the 401(k) plan in existence is so intertwined with the lawsuit at bar that the court has jurisdiction under ERISA. *See Franklin v. QHG of Gadsden, Inc.,* 127 F.3d 1024, 1027–1029 (11th Cir.1997); *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 11 (2nd Cir.1992); *Cefalu,* 871 F.2d at 1294.

### IV

■ While the court has jurisdiction over the subject matter of the case, the summary judgment record shows that the plaintiff is not entitled to relief.

The plaintiff does not contend that the defendants failed to follow the existing 401(k) plan. She argues instead that they are "equitably estopped from denying pension benefits" to her. (Pl.'s Am. Compl. ¶ 13.) In an appropriate case, a plaintiff may be awarded equitable remedies pursuant to 29 U.S.C.A. § 1132(a)(3)(B). However, equitable estoppel is not appropriate in this case.

A claim for estoppel arises when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act." *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). As discussed above, the promises and assurances that plaintiff claims formulate a "plan" were insufficient to establish a plan under ERISA and lack the definiteness that a claim for estoppel requires.

Nor is estoppel appropriate with regard to the 401(k) plan. Fourth Circuit jurisprudence makes it clear that "ERISA simply does not recognize the validity of oral ... modifications to ERISA plans." *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross,* 101 F.3d 1005, 1010 (4th Cir.1996). There is no evidence that the promises made to Bulls that a new plan would be established were in writing. Nonspecific oral promises cannot be the basis of a plan modification. Thus, these promises do not warrant enforcement under a theory of equitable estoppel.

Bulls' contentions establish no genuine issue of material fact and provide no basis for recovery under a theory of equitable estoppel. Accordingly, summary judgment for the defendants is proper.

### V

For the reasons stated, the defendants' motion for summary judgment will be granted and final judgment entered in their favor.